UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------x
ALADDIN CAPITAL HOLDINGS LLC,   :
                                :   CIVIL ACTION NO.
        Plaintiff,              :
                                :
v.                              :
                                :
HARUMI AOTO DONOYAN,            :
                                :   APRIL 25, 2011
        Defendant.              :
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Aladdin Capital Holdings LLC ("ACH" or "Plaintiff") respectfully submits this Memorandum of Law in support of its Motion for Preliminary Injunction against Defendant Harumi Aoto Donoyan ("Ms. Donoyan" or "Defendant"). As set forth below, this Court should grant ACH's Motion for Preliminary Injunction and extend the time period during which Ms. Donoyan is required to comply with her post-employment obligations because in the absence of such injunctive relief, ACH will continue to suffer irreparable harm due to Ms. Donoyan's continued violations of her post-employment restrictive covenants. As explained herein, ACH is likely to succeed on the merits of its claims and the balance of hardships tips in favor of ACH.

**I.      STATEMENT OF FACTS**

As is alleged in detail in Plaintiff's Complaint, this is an action for declaratory judgment and injunctive relief arising from Ms. Donoyan's willful and intentional violations of her post-employment restrictive covenants contained in her written Separation Agreement with ACH. Ms. Donoyan was employed by ACH for approximately ten (10) years and for much of that time, her job title was Senior Managing Director, Japan Sales and Marketing. In or about April 2010,

ACH and Ms. Donoyan agreed that she would resign from her employment pursuant to the terms of a Separation Agreement. Under the terms of that Separation Agreement, ACH agreed to provide Ms. Donoyan with certain payments, benefits and incentive compensation in exchange for Ms. Donoyan's agreement to seek on behalf of ACH additional investments from a specific customer in Japan, Yamasa Co., Ltd. ("Yamasa"), and to comply with certain post-employment restrictive covenants.

ACH recently learned that Ms. Donoyan has been violating her post-employment restrictive covenants by providing services to, and receiving payments from, competitors of ACH. More specifically, Ms. Donoyan has been working on behalf of Valcour Capital Holdings LLC, Valcour Holdings LLC, Valcour Capital Management LLC and/or Valcour Securities LLC (collectively, "Valcour"), Marinus Capital Holdings LLC, Marinus Capital LLC, Marinus Capital Management LLC and/or Marinus Securities LLC (collectively, "Marinus") and/or affiliates or subsidiaries of Valcour and Marinus (collectively referred to hereinafter as the "Competitors"). The majority owners of Valcour and Marinus are, indirectly or indirectly, two former executives and members of ACH, George Marshman and Joseph Schlim. Ms. Donoyan has solicited and is continuing to solicit business on behalf of the Competitors from Yamasa, the same customer in Japan she previously had solicited on behalf of ACH. In addition, Ms. Donoyan has induced Yamasa to redeem approximately $60 million from its prior investment in funds managed by ACH. In light of Ms. Donoyan's willful and deliberate breaches of her post-employment obligations, ACH seeks a preliminary injunction prohibiting Ms. Donoyan from any further violations of those obligations.

## II. ARGUMENT

A. **Legal Standard**

To obtain preliminary injunctive relief, ACH must show:

(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in [plaintiff's] favor.

Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., 339 F.3d 101, 108 (2d Cir. 2003) (alteration in original); Tom Doherty Assocs. Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33 (2d Cir. 1995); First Union Nat'l Bank v. Burke, 48 F. Supp. 2d 132, 142 (D. Conn. 1999).

In addition to the Court's authority under Fed. R. Civ. P. 65(a), the preliminary injunctive relief sought by ACH is authorized by the explicit terms of Paragraph 15 of the written Separation Agreement signed by Ms. Donoyan. That provision provides that either party to the Separation Agreement may seek injunctive relief from this Court to prevent any breach or threatened breach of Sections 4-9 or 12 of the Separation Agreement. See Exhibit B attached to ACH's Complaint.

B. **ACH Will Suffer Irreparable Harm If An Injunction Does Not Issue**

In many cases similar to the one at bar, courts have granted a preliminary injunction to prohibit an employee from violating the employee's post-employment restrictive covenants where such violations will cause irreparable harm to the former employer. See, e.g., Natsource LLC v. Paribello, 151 F. Supp. 2d. 465 (S.D.N.Y.) (granting a preliminary injunction that prohibited defendant former employee from soliciting the company's customers and finding that solicitation of such customers would cause irreparable harm to the former employer); Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999) (reasoning that "it would be very difficult to

calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come").

Here, ACH will suffer irreparable harm if Ms. Donoyan is not enjoined from violating her post-employment restrictive covenants. As set forth in the Complaint, Ms. Donoyan has violated and will continue to violate her post-employment restrictive covenants by providing services to ACH's competitors, Valcour and/or Marinus, soliciting business from ACH's customers, and inducing or attempting to induce ACH's customers to reduce or terminate their relationships with ACH. During her employment with ACH and as part of her Separation Agreement with ACH, Ms. Donoyan was responsible for developing and maintaining relationships with Japanese customers, including but not limited to Yamasa. As set forth in the Complaint, ACH recently learned that Ms. Donoyan has used the relationship that she built with Yamasa through ACH to harm ACH. Specifically, she has induced Yamasa both to invest funds with the Competitors and to redeem approximately $60 million that it previously had invested in funds managed by ACH. ACH will undoubtedly continue to suffer irreparable harm if Ms. Donoyan is allowed to continue to contact and solicit ACH's customers on behalf of the Competitors. Kelly v. Evolution Markets, Inc., 626 F. Supp. 2d 364, 376 (S.D.N.Y. 2009) (granting a preliminary injunction upon a finding that irreparable harm would occur if a former employee was allowed to contact and solicit the company's customers on behalf of a competitor brokerage firm).

C.  **ACH Is Likely To Succeed On The Merits Of Its Claims**

ACH is likely to succeed on the merits of its claims because Ms. Donoyan violated the post-employment restrictive covenants set forth in Paragraph 8 of her Separation Agreement while she continued to receive payments from ACH. As set forth in Paragraph 8 of the

Separation Agreement, Ms. Donoyan agreed to comply with the post-employment restrictive covenants set forth in her Employment Agreement and/or in ACH's Amended and Restated Limited Liability Company Agreement (the "LLC Agreement"). Paragraph 8(a) of the Separation Agreement provides as follows:

> Employee shall remain obligated by the post-employment restrictive covenants set forth in Section 7(c) of her Employment Agreement and Section 11.14 of the LLC Agreement; provided, however, that the restrictive periods applicable to the provisions of Section 11.14(b) and (c) of the LLC Agreement shall be reduced from three (3) years to one (1) year if Employee does not revoke this Agreement . . . . The time period for such restrictions shall begin to run commencing from the Separation Date.[1]

Section 11.14 of the LLC Agreement specifically prohibits Ms. Donoyan from providing services to competitors of ACH and its subsidiaries, from soliciting business from any of ACH's current and prospective customers, and from contacting or inducing any of ACH's current or prospective customers to terminate or reduce their relationships with ACH. See Exhibit C attached to ACH's Complaint. Under the terms of her Separation Agreement (which incorporated by reference her Employment Agreement and the LLC Agreement), Ms. Donoyan was prohibited from engaging in the foregoing activities during the time period in which she continued to receive compensation from ACH and/or for one year after her Separation Date (hereinafter, the "Prohibited Period").[2] Ms. Donoyan, however, has failed to comply with those obligations.

---

[1] Pursuant to the terms of the Separation Agreement, Ms. Donoyan's Separation Date was May 19, 2010. See Separation Agreement at Paragraph 2(a).

[2] The non-competition obligations set forth in Section 7(c) of Ms. Donoyan's Employment Agreement and in Section 11.14(a) of the LLC Agreement apply during the time period in which Ms. Donoyan continued to receive compensation from ACH. Under the terms of the Separation Agreement, such time period is from the Separation Date through May 5, 2011. See Separation Agreement at Paragraph 1(a). In addition, the non-solicitation obligations set forth in Sections 11.14(b)-(c) of the LLC Agreement apply regardless of whether Ms. Donoyan

ACH recently has learned that, during the Prohibited Period, Ms. Donoyan has been or will be compensated by the Competitors. Also during the Prohibited Period, one of ACH's customers with which Ms. Donoyan had considerable direct contact, Yamasa, made substantial investments in funds managed by the Competitors. In addition, Yamasa recently informed ACH that it was redeeming approximately $60 million that it previously had invested in funds managed by ACH. These events are not mere coincidence. Rather they are the result of Ms. Donoyan's deliberate and intentional violation of her post-employment restrictive covenants. Accordingly, ACH is likely to prevail on the merits of its claims.

D.  **Extension of Post-Employment Restrictive Covenants**

Under the terms of the Separation Agreement, the Prohibited Period is scheduled to expire on or about May 5, 2011 with respect to the non-competition obligations and on or about May 18, 2011 with respect to the non-solicitation obligations. This Court should extend the Prohibited Period, however, because Ms. Donoyan repeatedly has violated her post-employment restrictive covenants during the Prohibited Period.

Courts have recognized that when a former employee violates a covenant not to compete, the time period may be extended beyond that specified in the contract. See JAK Prod. Inc. v. Wiza, 986 F.2d 1080, 1090 (7th Cir. 1993) (extending former employee's one-year noncompete period for an additional one year from the date of former employee's last breach of the noncompete agreement); ServiceMaster Residential/Commercial Servs., L.P. v. Westchester Cleaning Servs., 2003 U.S. Dist. LEXIS 1104 (S.D.N.Y. Jan. 29, 2003) (same); MedX, Inc. v. Ranger, 788 F. Supp. 288 (E.D. La. 1992) (court extended noncompete obligations where former

---

continued to receive compensation from ACH. Those non-solicitation obligations apply for one year from the Separation Date, namely from May 19, 2010 through May 18, 2011. See Separation Agreement at Paragraphs 2(a) and 8(a).

employee was found to have violated those obligations for eight months during the two-year noncompete period).

Here, Ms. Donoyan has deprived ACH of the benefits of its bargain under the Separation Agreement. Under that Agreement, in addition to soliciting additional investments from Yamasa *on behalf of ACH*, Ms. Donoyan was obligated during the Prohibited Period not to provide services to any of ACH's competitors, not to solicit any of ACH's customers, and not to induce any of ACH's customers to terminate or reduce their relationship with ACH. Yet Ms. Donoyan breached all of those obligations during the Prohibited Period by providing services to the Competitors, by soliciting Yamasa on behalf of the Competitors, and by inducing Yamasa to redeem $60 million that it previously had invested in funds managed by ACH. In order to redress those breaches and restore the benefit of the bargain to ACH, this Court should order that Ms. Donoyan must comply with her post-employment restrictive covenants for a period of one year commencing on the date of this Court's issuance of an appropriate preliminary injunction.

E.     **The Balance of Hardships Is In ACH's Favor**

The balancing of the hardships tips decidedly in favor of granting injunctive relief. Without injunctive relief, ACH will lose the benefit of the goodwill and business relationships with its customers, including but not limited to Yamasa, that it has built over many years. As set forth in the Complaint, Ms. Donoyan has already caused irreparable harm to ACH's business relationship with Yamasa by inducing that customer to redeem its investments of approximately $60 million from ACH-managed funds. ACH has no adequate remedy at law to redress that harm because it is very difficult to measure the value of a customer relationship or to determine the amount that such customer, or referrals from that customer, might invest in the future. By contrast, enjoining Ms. Donoyan from providing services to ACH's competitors and from

directly contacting and soliciting ACH's customers will not present an undue hardship to Ms. Donoyan. Indeed, she specifically agreed to such conditions as part of her written Separation Agreement. Under these circumstances, a temporary injunction is manifestly appropriate.

### F.  The Court Should Excuse ACH From Having To Post A Bond In This Case

This Court has the discretion to dispense with the filing of a bond or to set the bond amount at zero. See Fed. R. Civ. P. 65(c); Clarkson Co. v. Shaheen, 544 F.2d 624, 632 (2d Cir. 1976); Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996). In this case, the issuance of an injunction will not harm Ms. Donoyan, but will merely enforce the post-restrictive employment covenants to which she already agreed. Due to ACH's likelihood of success on the merits, the absence of any harm to Ms. Donoyan and the other equitable factors discussed above, this Court should exercise its discretion to not require ACH to post any bond. Indeed, pursuant to Section 15 of the Separation Agreement, Ms. Donoyan has already waived her right to require ACH to post a bond with respect to this action.

### III. CONCLUSION

In this case, ACH meets the legal standard for preliminary injunctive relief because it can establish both irreparable harm and the likelihood of success on the merits. In addition, the balance of hardships tips decidedly in ACH's favor.

For these reasons, this Court should grant ACH's Motion for Preliminary Injunction.

                **PLAINTIFF,**
                **ALADDIN CAPITAL HOLDINGS LLC**

                By /s/ Daniel L. Schwartz
                    Daniel L. Schwartz (ct 09862)
                    Jaclyn K. Leung (ct 27399)
                    Day Pitney LLP
                    One Canterbury Green
                    Stamford, CT 06901-2047
                    Phone: (203) 977-7300
                    dlschwartz@daypitney.com
                    jleung@daypitney.com
                    Its Attorneys