UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------x
ALADDIN CAPITAL HOLDINGS LLC,             :
                                          :   CIVIL ACTION NO.
              Plaintiff,                  :
                                          :
v.                                        :
                                          :
HARUMI AOTO DONOYAN,                      :
                                          :   APRIL 25, 2011
              Defendant.                  :
---------------------------------------------------------------x

## COMPLAINT

Plaintiff, Aladdin Capital Holdings LLC (referred to hereinafter as "ACH"), by and through its undersigned counsel, alleges for its Complaint against Harumi Aoto Donoyan ("Ms. Donoyan"), as follows:

### PRELIMINARY STATEMENT

This is an action for declaratory judgment and injunctive relief arising from Ms. Donoyan's willful and intentional violations of her post-employment covenants contained in her written Separation Agreement with ACH. As set forth in more detail below, Ms. Donoyan was employed by ACH as a Senior Managing Director, Japan Sales and Marketing. In or about April 2010, ACH and Ms. Donoyan agreed that she would resign from her employment pursuant to the terms of a Separation Agreement. Under that Separation Agreement, ACH agreed to provide Ms. Donoyan with certain payments, benefits and incentive compensation and Ms. Donoyan agreed to seek additional investments for ACH from a specific customer in Japan and to comply with certain post-employment restrictive covenants.

ACH recently has discovered that Ms. Donoyan violated her post-employment restrictive covenants by providing services to direct competitors of ACH and by soliciting business for such competitors from the same client in Japan which she previously had solicited on behalf of ACH. In addition, Ms. Donoyan is attempting to induce that same client to redeem approximately $60 million from its prior investment in funds managed by ACH. In light of Ms. Donoyan's willful and deliberate breaches of her post-employment obligations, ACH seeks declaratory and injunctive relief as set forth herein.

## THE PARTIES

1. Plaintiff Aladdin Capital Holdings LLC is a Delaware limited liability company with its principal place of business at 6 Landmark Square, Stamford, Connecticut 06901.

2. Defendant Harumi Aoto Donoyan is a citizen of the State of New York and resides at 65 The Neck, Manhasset, New York 11030.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between ACH and Ms. Donoyan, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to ACH's claims occurred within the jurisdiction of this Court.

5. Defendant is subject to personal jurisdiction in this district because she has transacted business within the State of Connecticut through her relationship with ACH.

## FACTS

6.  ACH is a boutique investment banking firm with advisory, investment management, and broker/dealer businesses. ACH provides sophisticated investment management and financial services to its customers and expends considerable efforts and resources in obtaining and maintaining business relationships with its current and prospective customers. ACH offers various investment products to its current and prospective customers, including but not limited to investment opportunities in separately-managed accounts, fund structures, collateral loan obligations ("CLOs"), collateral debt obligations ("CDOs"), and other pooled or segregated investment structures. In order to protect its business and relationships with current and prospective customers, ACH generally includes reasonable post-employment restrictive covenants in its employment agreements with its managing directors. Such restrictive covenants are also entered into by ACH's members in connection with their execution of ACH's Limited Liability Company Agreement.

**Ms. Donoyan's Employment Agreement**

7.  ACH hired Ms. Donoyan in or about April 2000. Throughout her career at ACH, Ms. Donoyan's primary job responsibilities were to market ACH's products and services to prospective customers and particularly to prospective customers in Japan. On or about March 24, 2008, ACH and Ms. Donoyan entered into an Amended and Restated Employment Agreement (the "Employment Agreement") in which Ms. Donoyan's job title was listed as Senior Managing Director, Japan Sales and Marketing.

8. As a Senior Managing Director, Japan Sales and Marketing, Ms. Donoyan was responsible for attracting and developing relationships with Japanese customers for ACH.

9. Ms. Donoyan agreed to certain post-employment restrictions as set forth in her Employment Agreement. Specifically, Section 7(c) of the Employment Agreement provides in relevant part that:

> In the event that Employee's employment is terminated by Company at any time without cause and Employee continues to receive compensation from the Company, Employee covenants that Employee shall not accept employment or start or engage in any business practice that is the same or substantially similar to the business of the Company, or which otherwise competes with the business of the Company anywhere in the United States for the period which Employee continues to receive compensation from the Company. The Employee otherwise acknowledges and re-affirms her agreement, as a Member, to the terms of Section 11.14 of the Operating Agreement (Non-Competition, Non-Solicitation).

A true and accurate copy of Ms. Donoyan's Employment Agreement with ACH is attached hereto as Exhibit A.

10. Ms. Donoyan also was a Member of ACH and a signatory to ACH's Amended and Restated Limited Liability Company Agreement. As of the date on which she signed her Employment Agreement, Ms. Donoyan owned 500 common units of ACH.

11. During her employment with ACH, Ms. Donoyan played a significant role in assisting ACH to develop business from Yamasa Co., Ltd. ("Yamasa"), a company based in Japan. During Ms. Donoyan's employment with ACH, Yamasa invested approximately $48 million in funds managed by ACH.

**Ms. Donoyan's Separation From ACH**

12. In or about April 2010, ACH and Ms. Donoyan agreed that Ms. Donoyan would resign from her employment with ACH pursuant to a Confidential Separation

Agreement, General Release and Covenant Not To Sue (the "Separation Agreement").

13. Pursuant to Paragraph 1(a) of the Separation Agreement, ACH agreed to continue to make certain salary payments and benefits through May 5, 2011 to Ms. Donoyan.

14. Pursuant to Paragraph 2(a) of the Separation Agreement, Ms. Donoyan's resignation became "effective upon the expiration of the revocation period to which Employee is entitled under the provisions of paragraph 11 hereof (the "Separation Date")." Because Ms. Donoyan signed the Separation Agreement on May 12, 2010 and was provided a seven (7) day revocation period pursuant to Paragraph 11 of that Agreement, Ms. Donoyan's resignation became effective on May 19, 2010 (hereinafter, the "Separation Date").

15. Pursuant to Paragraph 2(b) of the Separation Agreement, Ms. Donoyan agreed to provide certain Transition Services to ACH during a Transition Period defined in Section 2(a) of the Separation Agreement as being, "from the Separation Date until the first to occur . . . of (i) November 1, 2010, or (ii) the date on which the Target commits to the Proposed Investment." The Target referenced in Paragraph 2(b) of the Separation Agreement is Yamasa.

16. Pursuant to Paragraph 2(b) of the Separation Agreement, Ms. Donoyan agreed during the Transition Period to interact with the Target through telephone calls, written correspondence and in-person visits. The purpose of such communications and meetings was to recommend that Yamasa convert its interests in the Aladdin Flexible Investment Fund into an equity stake in a proposed CLO (the "Proposed Investment") to be sponsored and managed by ACH or an affiliate.

17. ACH agreed to assist Ms. Donoyan in providing the above-described services, which were defined in the Separation Agreement as the "Transition Services." More specifically, ACH agreed to: (i) finance up to three round-trips to Japan, including business travel on airlines and lodging at business hotels in Tokyo; (ii) provide her with appropriate business equipment, including but not limited to a Blackberry, laptop computer and telephone charge privileges; and (iii) provide the services of a senior manager from ACH's Loan Group to assist Ms. Donoyan. See Separation Agreement at ¶ 2(b). In addition, ACH agreed to pay Ms. Donoyan her base salary of $225,000/year from her Separation Date through May 5, 2011. Id. at ¶ 1(a).

18. Pursuant to Paragraph 2(b) of the Separation Agreement, ACH also agreed to provide Ms. Donoyan with "incentive compensation at the rate of 9% of all Aladdin Capital Management LLC fee income generated from assets placed in the Proposed Investment, as and when received by Aladdin Capital Management, gross of distribution expenses."

19. Pursuant to Paragraph 1(a) of the Separation Agreement, ACH further agreed that it would maintain Ms. Donoyan's securities and other licenses and registrations through May 5, 2011.

20. As part of the Separation Agreement, Ms. Donoyan agreed to abide by certain Post-Employment Restrictive Covenants as set forth in Paragraph 8(a) of the Separation Agreement. Specifically, Paragraph 8(a) of the Separation Agreement provides:

> Employee shall remain obligated by the post-employment restrictive covenants set forth in Section 7(c) of her Employment Agreement and Section 11.14 of the LLC Agreement; provided, however, that the restrictive periods applicable to the provisions of Section 11.14(b) and (c) of the LLC Agreement shall be reduced from three (3) years to one (1) year if Employee does not revoke this Agreement . . . . The time period for such restrictions shall begin to run commencing from the Separation

Date. For the avoidance of doubt, the restrictions set forth in Section 11.14(b) of the LLC Agreement with respect to solicitation by Employee for her "own account" apply only to such solicitations for a business that is the same or similar to that of the Company.

A true and correct copy of the Separation Agreement is attached hereto as Exhibit B.[1]

**Ms. Donoyan's Post-Employment Restrictive Covenants**

21. Pursuant to Paragraph 8(a) of the Separation Agreement, Ms. Donoyan agreed that for the time period after the Separation Date during which ACH continued to pay her salary and benefits, she would comply with Section 11.14 (a) of the LLC Agreement which prohibits her from being:

> . . . engaged, directly or indirectly, as an agent, employee, manager, consultant, principal, representative, partner, officer, director, stockholder, proprietor, owner or otherwise of any Person engaged in competition with the Company or any of its Subsidiaries . . . .

As set forth in Paragraph 1(a) of the Separation Agreement, ACH has continued to pay salary and benefits to Ms. Donoyan from her Separation Date through May 5, 2011.

22. Pursuant to Paragraph 8(a) of the Separation Agreement, Ms. Donoyan agreed that she would comply with Section 7(c) of her Employment Agreement, which provides that if her employment is terminated by ACH at any time without cause:

> . . . Employee [Ms. Donoyan] covenants that Employee shall not accept employment or start or engage in any business or practice that is the same or substantially similar to the business of the Company [ACH], or which otherwise competes with the business of the Company anywhere in the United States for the period during which Employee continues to receive compensation from the Company.

As set forth in Paragraph 1(a) of the Separation Agreement, ACH has continued to pay compensation to Ms. Donoyan from her Separation Date through May 5, 2011.

23. Pursuant to Paragraph 8(a) of the Separation Agreement, Ms. Donoyan

---

[1] The fair market value of ACH and the purchase price for Ms. Donoyan's units have been redacted from the Separation Agreement because such information is confidential and is not relevant to the allegations herein.

agreed that for a period of one (1) year after the Separation Date, she would comply with Section 11.14(b) of the LLC Agreement which prohibits her from:

> . . . for [her] own account, or for the account of any Person engaged or attempting to become engaged in the same or a similar business as the Company or its Subsidiaries, directly or indirectly through others, sell to, solicit, contact or serve any Person that is a customer or prospective customer (as defined below) of the Company or it Subsidiaries;

24. Pursuant to Paragraph 8(a) of the Separation Agreement, Ms. Donoyan agreed that for a period of one (1) year after the Separation Date, she would comply with Section 11.14(c) of the LLC Agreement which prohibits her from:

> . . . directly or indirectly contact[ing] or attempt[ing] to persuade any customer or prospective customer, partner, agent or employee of the Company or its Subsidiaries to terminate his, her or its relationship with the Company or its Subsidiaries or do any act that may result in the impairment of the relationship between the Company or its Subsidiaries and their respective customers or prospective customers, agents or employees.
>
> For the purposes of this Section 11.14, a "customer or prospective customer" includes a Person: (i) to whom or which the Company or its Affiliates has provided services or products at any time in the three (3) years prior to the date such Member ceases to be a Member; (ii) for whom or which a contract has been in effect through or as a result of the services or product sales of the Company or its Affiliates at any time in the three (3) years prior to the date such member ceased to be a Member; or (iii) with whom or which negotiations had been conducted on behalf of the Company or its Affiliates for the purpose of providing services or products at any time in the three (3) years prior to the date such Member ceased to be a Member.

A true and accurate copy of Section 11.14 of the LLC Agreement is attached hereto as Exhibit C.

**Ms. Donoyan's Activities During The Transition Period**

25. In accordance with Paragraph 2(b) of the Separation Agreement, during the Transition Period, ACH paid all expenses incurred by Ms. Donoyan in connection with her solicitations of investment monies from Yamasa. Such expenses included, but were not limited to, three (3) round-trip business-class airline tickets to Japan, hotel accommodations

in Japan, restaurants in Japan and the use of a Blackberry, laptop computer and cell phone.

26. In accordance with Paragraph 1(a) of the Separation Agreement, during the Transition Period and thereafter, ACH paid Ms. Donoyan at the rate of $225,000/year and provided her with health and dental insurance.

27. During the Transition Period, while receiving pay from and providing services on behalf of ACH, Ms. Donoyan induced Yamasa to invest an additional $12 million in funds managed by ACH.

28. In accordance with Paragraph 2(b) of the Separation Agreement, ACH provided incentive compensation to Ms. Donoyan in the amount of 9% of all Aladdin Capital Management LLC fee income, gross of distribution expenses, generated from the additional $12 million invested by Yamasa.

29. In accordance with Paragraph 1(a) of the Separation Agreement, Ms. Donoyan received payments for her base annual salary and benefits from ACH during the Transition Period.

**Ms. Donoyan's Breach of Her Post-Employment Restrictive Covenants**

30. Upon information and belief, at some time after her Separation Date, Ms. Donoyan began to provide services to Valcour Capital Holdings LLC, Valcour Holdings LLC, Valcour Capital Management LLC and/or Valcour Securities LLC (collectively, "Valcour"), Marinus Capital Holdings LLC, Marinus Capital LLC, Marinus Capital Management LLC and/or Marinus Securities LLC (collectively, "Marinus") and/or affiliates or subsidiaries of Valcour and Marinus (collectively referred to hereinafter as the "Competitors"). The majority owners of the Competitors are, directly or indirectly, George Marshman and Joseph Schlim, both of whom are former officers and members of ACH. The

Competitors provide similar services to ACH and compete with ACH for customers, both of which are known to Ms. Donoyan.

31. Upon information and belief, Ms. Donoyan has received payments, either directly or indirectly, from the Competitors.

32. Upon information and belief, Ms. Donoyan has contacted ACH's current customers, including but not limited to Yamasa, and has solicited such customers to invest in funds managed by the Competitors.

33. Upon information and belief, after the Transition Period, Ms. Donoyan contacted Yamasa in order to induce it to redeem approximately $60 million that it previously had invested in funds managed by ACH.

34. Ms. Donoyan continued to receive salary payments, benefits and incentive compensation from ACH during the same time period that she solicited business on behalf of the Competitors from ACH's current and prospective clients, including but not limited to Yamasa.

35. Ms. Donoyan has breached several of her obligations under the Separation Agreement through her above-described conduct.

## CAUSES OF ACTION

### COUNT I

**(Request For Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201 and 2202)**

36. ACH repeats and realleges paragraphs 1 through 35, as though fully set forth herein.

37. ACH brings this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and seeks a determination that Ms. Donoyan has breached her post-

employment restrictive covenants in violation of the Separation Agreement.

38.     Based on Ms. Donoyan's above-described conduct, Ms. Donoyan has breached her post-employment restrictive covenants in violation of the Separation Agreement.

39.     Pursuant to the express provision of Paragraph 15 of the Separation Agreement, Ms. Donoyan agreed that ACH may seek equitable relief in this Court to enforce and prevent any current or further breach of Ms. Donoyan's post-employment restrictive covenants set forth in Paragraph 8(a) of the Separation Agreement.

40.     ACH has both a legal and an equitable interest in having this Court declare that Ms. Donoyan has violated her post-employment restrictive covenants.

41.     Without an award for declaratory judgment, ACH will continue to suffer irreparable harm to its business and to its customer relationships.

42.     There is an actual and justiciable controversy between ACH and Ms. Donoyan regarding Ms. Donoyan's breach of her post-employment restrictive covenants.

## COUNT II

### (Request For Injunctive Relief)

43.     ACH repeats and realleges paragraphs 1 through 42, as though fully set forth herein.

44.     This action for injunctive relief is necessary to preserve and protect ACH's business relationships and business opportunities with its current and prospective customers, including but not limited to Yamasa.

45.     Unless and until restrained by order of this Court by means of the preliminary injunction requested herein, Ms. Donoyan will continue to violate her post-

employment restrictive covenants.

46. Ms. Donoyan's continued breach of her post-employment restrictive covenants will work to the substantial detriment of ACH, and to the substantial financial benefit of Ms. Donoyan and the Competitors.

47. ACH will suffer significant and irreparable harm if Ms. Donoyan is permitted to continue to breach her post-employment restrictive covenants.

48. ACH is without an adequate remedy at law because Ms. Donoyan's continued violations of her post-employment restrictive covenants will cause ACH to suffer further irreparable harm and damage its business relationships and business opportunities with its current and prospective customers, the extent of which will be difficult to measure.

49. ACH is likely to succeed on the merits of its claims because: (i) based on the facts alleged above in Paragraphs 1-35, Ms. Donoyan has breached her post-employment restrictive covenants; and (ii) the express terms of Section 15 of the Separation Agreement authorize the injunctive relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff ACH requests a judgment awarding:

1. A declaratory judgment that Ms. Donoyan has breached the post-employment restrictive covenants set forth in her Separation Agreement;

2. Temporary, preliminary and permanent injunctive relief enjoining Ms. Donoyan from becoming engaged as an employee or otherwise providing services to any competitors of ACH or any of their subsidiaries, including, without limitation, the Competitors;

3. Temporary, preliminary and permanent injunctive relief enjoining Ms. Donoyan from directly or indirectly contacting or soliciting any current customer of ACH or any of its subsidiaries, including but not limited to Yamasa;

4. Temporary, preliminary and permanent injunctive relief enjoining Ms. Donoyan from directly or indirectly contacting or attempting to induce any current customer of ACH or any of its subsidiaries, including but not limited to Yamasa, to redeem its investments or terminate or reduce his, her or its relationship with ACH or any of its subsidiaries;

5. All costs, disbursements, attorney's fees and expenses incurred by ACH in this action; and

6. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**PLAINTIFF,
ALADDIN CAPITAL HOLDINGS LLC**

By /s/ Daniel L. Schwartz
Daniel L. Schwartz (ct 09862)
Jaclyn K. Leung (ct 27399)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901-2047
Phone: (203) 977-7300
dlschwartz@daypitney.com
jleung@daypitney.com
Their Attorneys