# EXHIBIT B

## CONFIDENTIAL SEPARATION AGREEMENT, GENERAL RELEASE AND COVENANT NOT TO SUE

This Confidential Separation Agreement, General Release and Covenant Not to Sue (the "Agreement") is entered into by Harumi Aoto Donoyan ("Employee"), residing at 65 The Neck, Manhasset, NY 11030, and Aladdin Capital Holdings LLC ("ACH"), a Delaware limited liability company, with its principal place of business at Six Landmark Square, Stamford, Connecticut 06901, including all of ACH's affiliated, subsidiary, parent and related companies and entities (collectively referred to hereinafter as the "Company"). Employee and Company agree as follows:

WHEREAS, Company employed Employee as Senior Managing Director, Japan Sales and Marketing pursuant to the Amended and Restated Employment Agreement by and between Employee and the Company dated March 24, 2008 (the "Employment Agreement"); and

WHEREAS, Employee and the Company have agreed that Employee shall resign from her employment with the Company, and the Employment Agreement will be terminated, all pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth below, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    **Consideration:** Employee and the Company are entering into this Agreement in order to assist both Employee and the Company in Employee's transition from employment with the Company and to resolve any and all potential disputes arising out of Employee's employment and separation from employment with the Company. In consideration of Employee's execution of this Agreement and promise to comply with its terms, including but not limited to the release of claims and covenant not to sue set forth below in Sections 4 and 5, and also provided that Employee does not revoke this Agreement pursuant to Section 11 below, the Company agrees to provide the following consideration to Employee:

(a)    **Salary and Benefits Continuation:** Employee's employment with ACH shall be treated under her Employment Agreement as having been terminated without Cause. Accordingly, the Company shall continue to pay Employee her current base annual compensation of Two Hundred Twenty-Five Thousand Dollars ($225,000) pursuant to its typical payroll procedures from the Separation Date (as defined below) through May 5, 2011 (the "Salary Continuation Payments") and to provide Employee with the health and dental insurance coverage described in Section 5(a) of her Employment Agreement for the same time period (the "Benefits Continuation"). Employee will be treated as a member of the Company through the Separation Date and all distributions made to her under this Section 1(a) shall be reflected as guaranteed payments on her 2010 K-1 in a manner consistent with past practices of the Company. Employee shall cease to be treated as a member of the Company on the Separation Date and all payments made to Employee under this Section 1(a) thereafter will be reported as payments made to an independent contractor. The Company shall cause Employee's securities and other licenses and registrations with Aladdin Capital LLC to be maintained through the period of time during which the Salary Continuation Payments and/or Benefits Continuation remain in effect.

(b)      <u>Purchase of Units and Shares</u>:

(c)      <u>Acceleration</u>:   Notwithstanding Section 1(b) hereof, all outstanding Company payment obligations to Employee with respect to her Ownership Interest shall be accelerated and immediately due and payable, without requirement of notice or demand, upon (i) the occurrence of a Bankruptcy Event (as defined in the LLC Agreement),or (ii) upon the failure to pay when due, within ten (10) business days after written demand therefor, any installment of the purchase price payable for Employee's Ownership Interest in accordance with Section 1(b) above.

2.      <u>Resignation and Transition</u>:   In consideration of Company's execution of this Agreement and promise to comply with its terms, including but not limited to the consideration set forth above in Section 1, Employee agrees to provide the following consideration to Company:

(a)      <u>Resignation</u>: On the date of execution of this Agreement, Employee shall submit a letter of resignation from her employment at Company, which resignation shall be effective upon

expiration of the revocation period to which Employee is entitled under the provisions of paragraph 11 hereof (the "Separation Date"). From the Separation Date until the first to occur (the "Effective Date") of (i) November 1, 2010, or (ii) the date on which the Target commits to the Proposed Investment, as such terms are defined below, (the "Transition Period"), Employee shall provide the Transition Services described in 2(b) below.

(b)     **Transition Services:**  During the Transition Period, the Employee agrees to provide the following services in connection with promoting, to a targeted Company client based in Japan (the "Target"), a conversion of such Target's interests in the Aladdin Flexible Investment Fund into an equity stake in a proposed collateral loan obligation vehicle (the "Proposed Investment") to be sponsored and managed by the Company or an affiliate (the "Transition Services"):

- Making and receiving telephone calls, and sending and responding to written correspondence, with respect to the Target as are consistent with the goal of the Transition Services;
- Making up to three (3) trips to Japan for purposes of attending conferences with the Target and the Target's advisors;
- Providing such support and attending such internal meetings of the Company (telephonically or in person) requested by the Company in respect to the marketing and closing of the Proposed Investment, as Company may reasonably request or require; and
- Prepare status reports to the Company CEO or his designee on the foregoing on a monthly basis, and take such instruction and direction from the Company CEO or his designee with respect to the timing and pursuit of the Transition Services as such Company representative shall reasonably request from Employee.

During the period from the Separation Date until the Effective Date, Employee shall have no formal schedule with respect to the performance of the Transition Services, provided, however, that Employee shall adhere to such schedules and timelines as shall be established and agreed between the Company and Employee from time to time for the prompt performance and closure of the Transition Services.  Employee shall not be required to be present at the Company's offices on a day-to-day basis.  Employee will use commercially reasonable efforts to market the Proposed Investment to Target; provided that, for the avoidance of doubt, Company acknowledges that Employee has made no representation to Company with respect to her likelihood of success in her marketing efforts related to the Proposed Investment.

In consideration of Employee's specific efforts in carrying out the Transition Services, the Company shall provide the following institutional support and incentive compensation to promote the success of Employee for the benefit of the Company: (i) finance up to three round trips to Japan (which shall include travel benefits customarily provided to Employee during her employment, including, without limitation, business class travel on airlines and lodging at hotels in Tokyo, customarily used by Employee, with reimbursement of all Employee cash outlays within ten (10) business days of receipt of all travel receipts documenting such cash outlays in compliance with the then-current Company travel policy, as provided from time to time to Employee); (ii) provide appropriate portable business electronic equipment, including a Blackberry, laptop computer and telephone charge privileges or services; (iii) make available

during Employee's first trip and, to the extent requested, on subsequent trips, the services of a senior manager from of the Company's Loan Group, to accompany Employee for the purpose of facilitating discussions regarding the Proposed Investment; and (iv) pay incentive compensation at the rate of 9% of all Aladdin Capital Management LLC fee income generated from assets placed in the Proposed Investment, as and when received by Aladdin Capital Management, gross of distribution expenses.

(c)     **Transition Period Rights and Obligations**:   Except as expressly provided in this Agreement, Employee will continue to be subject to all of the duties, fiduciary and otherwise, applicable to an employee, officer or Member of the Company, by law or under the terms of the Employment Agreement or LLC Agreement until the Separation Date. Thereafter, Employee's duties will be limited to those that expressly survive the termination of the Employment Agreement and the termination of Employee's membership of the LLC in connection with the sale and purchase of Employee's Ownership Interest under the LLC Agreement, as such agreements may be amended by this Agreement, and those provided for herein.   The indemnification provisions set forth in the Employment Agreement, the LLC Agreement, any applicable insurance policy and/or any other relevant document shall continue to be applicable to Employee in accordance with their terms through the Separation Date, and thereafter, as applicable to former officers and Members of ACH.

(d)  **Vested Deferred Compensation**:   Nothing contained in this Agreement shall have the effect of reducing, limiting or waiving Employee's vested interest in the Company's former deferred compensation plan, which interest shall continue and be payable in accordance with the plan's terms.

3.     **No Consideration Absent Execution of the Agreement**:   Employee understands and agrees that she is not entitled to and would not receive the Salary Continuation Payments and Benefits Continuation described above in Section 1(a) except for her execution of this Agreement and her fulfillment of the promises contained herein.  Employee also acknowledges and agrees that the Salary Continuation Payments and Benefits Continuation described above in Section 1(a) are adequate and sufficient consideration for all of her obligations under this Agreement.

4.     **Release and Waiver of Claims**:  In consideration of the mutual promises and covenants set forth herein, the parties hereby provide one another with the following releases and waiver of claims:

(a) Employee, for herself and her heirs, legal representatives and assigns (collectively referred to hereinafter as the "Employee Releasors"), agrees that  each Employee Releasor hereby knowingly and voluntarily waives, releases and forever discharges, and will not file or cause to be filed against the Company, its successors or assigns, or any of its or their members, owners, shareholders, directors, officers, employees or agents (collectively referred to hereinafter as the "Company Releasees") any claim, lawsuit or complaint, whether known or unknown, asserted or unasserted, suspected or unsuspected, that Employee may have as a result of any incident, act, event or omission, whether or not related to her employment or separation from employment with the Company that has occurred at any time up to and including the Separation

71464282.3
4·14·2010 3:23 PM

-4-

Date, provided that this provision shall not apply to any fraudulent act. Employee agrees that among the rights she knowingly and voluntarily waives and releases are her right to bring any claims, lawsuits or complaints against the Company Releasees, arising on or before the Separation Date , under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (including the amendments of the Older Workers Benefit Protection Act of 1990), the Employee Retirement Income Security Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Connecticut Fair Employment Practices Act, and any other federal, state or local law dealing with discrimination on any basis, including but not limited to sex, age, race, national origin, sexual orientation, veteran status, marital status, religion, and physical and/or mental disability. Employee also agrees, on behalf of herself and each other Employee Releasor, that she hereby is waiving and releasing all rights to bring any claims, lawsuits or complaints against the Company Releasees alleging unpaid wages, unpaid commissions, unpaid bonuses, unpaid overtime, unpaid accrued vacation pay, breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination, violation of public policy, negligence, retaliation, misrepresentation, defamation, infliction of emotional distress or any other possible complaint or claim. Nothing herein shall prevent or prohibit Employee from filing a complaint or charge, or participating as a witness, in any matter before any federal, state or local agency (including but not limited to the Equal Employment Opportunity Commission); provided, however, that Employee agrees that she and each Employee Releasor shall not seek, accept or receive any monetary damages or awards from any such proceeding. This provision also does not limit Employee's right to bring any claim, lawsuit, or complaint seeking to enforce the terms of this Agreement.

(b)   The Company, for itself and its affiliates, legal representatives, successors and assigns (collectively referred to hereinafter as the "Company Releasors"), and each Member of the Company executing this Agreement, on behalf of such Member and such Member's heirs, legal representatives, successors and assigns (collectively referred to herein as the "Member Releasors"), hereby knowingly and voluntarily waive, release and forever discharge, and will not file or cause to be filed against   Employee or her heirs, legal representatives and assigns ("Employee Releasees"), any claim, lawsuit or complaint, whether known or unknown, asserted or unasserted, suspected or unsuspected, that they may have as a result of any incident, act, event or omission, whether or not related to Employee's employment or separation from employment with the Company, that has occurred at any time up to and including the Separation Date, provided that this provision shall not apply to any fraudulent  actions for which Employee would not be entitled to indemnification as provided in Section 2(c) above.  The Company and each Member of the Company executing this Agreement agrees that it is waiving and releasing all rights to bring any claims, lawsuits or complaints against the Employee Releasees alleging any matter within the scope of this release arising on or before the Separation Date.    This Section also does not limit Company's right to bring any claim, lawsuit, or complaint seeking to enforce the terms of this Agreement.

5.     **Covenant Not to Sue:**  The Employee, on behalf of herself and each of the other Employee Releasors; the Company, on behalf of itself and each of the other Company Releasors; and each Member of the Company executing this Agreement, on behalf of such Member and such Member's other Member Releasors, hereby agrees not to file or permit to be filed on her/their behalf any claim or lawsuit that is within the scope of or is barred by or in violation of

the releases set forth above in Section 4 of this Agreement.  This Agreement may and shall be pled as a full and complete defense to, and may be used as a basis for an injunction against any action, suit or other proceeding that may be instituted, prosecuted or maintained in breach hereof. If a party hereto files or makes, or permits to be filed or made on her/their behalf, a lawsuit, charge, complaint, appeal or other claim asserting any claim or demand that is within the scope of the matters released in Section 4 above, whether or not such claim or demand is otherwise valid, in addition to any other rights and remedies which may be available, the defending party shall be entitled to: (i) immediate dismissal of any such claim or demand; (ii) full enforcement of the terms of this Agreement; and (iii) such relief as the Court determines is just and proper.  The Employee, on behalf of herself and each of the other Employee Releasors; the Company, on behalf of itself and each of the other Company Releasors; and each Member of the Company executing this Agreement, on behalf of such Member and such Member's other Member Releasors, hereby further agrees not to voluntarily participate in, act as a witness, consultant, or expert, aid or render assistance, provide information or produce documents in any action at law or proceeding in equity against any other person or entity entitled to the benefit of this Section 5 with respect to any claim arising at any time up to and including the Separation Date, unless requested to do so in writing by the other party or unless compelled to do so by force of law; provided, however, that nothing contained in this Section 5 shall prohibit any Employee Releasor, Company Releasor or Member Releasor from engaging in any act otherwise prohibited by this Section 5 in connection with any action that (i) involves matters expressly excluded from the scope of the releases set forth in Section 4 of this Agreement, or (ii) relates to the enforcement of this Agreement.  In the event that a party hereto believes she/it is compelled by force of law to act in any manner otherwise prohibited by this Section 5, such party agrees to provide the other party with a copy of the subpoena or other judicial notice which she/it believes compels such participation as promptly as practicable under the circumstances.

6.     **Confidential Information:**  Employee hereby covenants that she has returned, or will return prior to the Separation Date, to the Company, or has destroyed or will destroy prior to the Separation Date, all Confidential Information, as defined in the Employment Agreement, obtained in the course of Employee's employment with the Company and/or in the Employee's possession and subject to the terms of the Employment Agreement, including, without limitation, all account lists, records and data related to all customers of the Company, but excluding any Confidential Information related to the Transition Services or this Agreement. Employee further agrees to not disclose and to keep confidential any non-public, secret, confidential or proprietary information, knowledge or data relating to the Company, including but not limited to the Company's processes, products, services, client lists, client identities, customers, vendors, suppliers, financial data, marketing strategies, business plans, methods of doing business, pricing information, trade secrets, research, documentation, manuals, reports, files and other written information, computer software and systems, and all other non-public information relating to the Company utilized or coming into Employee's possession or knowledge during the Transition Period (the "Transition Period Confidential Information").  Employee agrees not to use or disclose for any purpose whatsoever or in any manner whatsoever any Transition Period Confidential Information of the Company and shall, upon termination of the Transition Period, either return to the Company or destroy all such Transition Period Confidential Information in the Employee's possession as of the Effective Date. Such Transition Period Confidential

71464282.3
4·14·2010 3:23 PM

-6-

Information shall be treated as, and subject in all respects to Employee's continuing obligations with respect to, Confidential Information under the LLC Agreement.

7.      **Return of Information and Materials:**   Employee agrees that she will return all Company property, including but not limited to inventions, discoveries, improvements and ideas, whether patentable or not, made solely by the Employee or jointly with others, which relate to the Company's business, products, services, processes, technology, research, product development, marketing programs, manufacturing operations, or business activities, to the Company on or before the Separation Date, or, if used in respect of any Transition Services, promptly after such property is no longer needed for such Transition Services.   Employee acknowledges that all Confidential Information made available to, or coming to the knowledge of, Employee through the Separation Date, and all manuals, notebooks, records, tapes, computers, discs, CD-ROMS or other storage mechanisms of documents or information made, used or kept by Employee in connection with the business of the Company and all copies thereof, have been and shall remain the sole and exclusive property of the Company.

8.      **Post-Employment Restrictive Covenants:**

(a)  Employee shall remain obligated by the post-employment restrictive covenants set forth in Section 7(c) of her Employment Agreement and in Section 11.14 of the LLC Agreement; provided, however, that the restrictive periods applicable to the provisions of Section 11.14 (b) and (c) of the LLC Agreement shall be reduced from three (3) years to one (1) year if Employee does not revoke this Agreement pursuant to Section 11 below.   The time period for such restrictions shall begin to run commencing from the Separation Date. For the avoidance of doubt, the restrictions set forth in Section 11.14(b) of the LLC Agreement with respect to solicitation by Employee for her "own account" apply only to such solicitations for a business that is the same or similar to that of the Company.

(b)  After the Separation Date, Employee may  in her sole and absolute discretion seek and/or accept any new employment that is not in violation of Section 7(c) of her Employment Agreement or of Section 11.14 of the LLC Agreement and which does not interfere with Employee's reasonable commercial efforts to carry out the Transition Services.  However, in the event that any new employment contemplated by Employee commencing during the Transition Period would be in violation of any of the foregoing provisions, Employee then may request in writing that the Company waive the application thereof in return for a waiver of the Company's obligation to continue paying her Salary Continuation Payments and Benefits Continuation through May 5, 2011.  The Company may, in its sole and absolute discretion grant such a written request, which grant shall not be unreasonably withheld. In the event that any new employment contemplated by Employee after the Transition Period would be in violation of any of the foregoing provisions, Employee may elect to terminate the application thereof in return for a waiver of the Company's obligation to continue paying her Salary Continuation Payments and Benefits Continuation through May 5, 2011 by delivery of written notice of her election to the Company prior to the commencement of such employment.

9.      **Non-Disparagement:**   Employee, on behalf of herself and each other Employee Releasor, agrees not to make any critical or disparaging statements, comments or remarks (oral

or written) to any person or entity about the Company, any of the Company Releasees, or any of the Company's products or services, or do anything which would directly interfere with the business, business prospects or reputation of the Company and/or the Company's existing or prospective client, vendor or other business relationships; provided, however, that nothing herein shall prohibit or prevent the Employee from providing truthful information when required by legal process. The Company, on behalf of itself and each of the other Company Releasors; and each Member of the Company executing this Agreement, on behalf of such Member and such Member's other Member Releasors, hereby agrees not to make any critical or disparaging statements, comments or remarks (oral or written) to any person or entity about Employee or Employee's business acumen or abilities, or which would directly interfere with the business, business prospects or reputation of the Employee and/or the Employee's existing or prospective client, vendor or other business relationships; provided, however, that nothing herein shall prohibit or prevent any Company Releasor or Member Releasor from providing truthful information when required by legal process.

10.     **Consultation With An Attorney:**  Employee acknowledges that she has read and understands the terms of this Agreement and that she has been advised by the Company to consult with an attorney regarding this Agreement. Employee further acknowledges that she has had reasonable and sufficient time to review this Agreement, that she has discussed it with her attorney, and that she is voluntarily signing it without duress or coercion on the date indicated below.

11.     **Time to Consider Agreement and Revocation:**  Employee acknowledges that she has been informed that she has the right to consider this Agreement for a period of twenty-one (21) calendar days following her receipt of counterparts of this Agreement executed on behalf of the Company and each of the Company's Members before deciding whether or not to enter into this Agreement. Employee also acknowledges that she voluntarily has chosen to sign and enter into this Agreement without duress or coercion, and with a full understanding of the meaning and effect of this Agreement, on the date set forth below. Employee further acknowledges that she can revoke this Agreement within seven (7) calendar days after signing it (the "Revocation Period"), by doing so in writing via certified mail, overnight mail, or facsimile. Any such revocation must state that it is a revocation of this Agreement, must be in writing and must be delivered within the Revocation Period to:

>           Sharad Samy, Esq., General Counsel
>           Aladdin Capital Holdings LLC
>           Six Landmark Square
>           Stamford, CT 06901

This Agreement will not become effective or enforceable until the Revocation Period has expired. If the last day of the Revocation Period is a Saturday, Sunday or legal holiday in Connecticut, then the Revocation Period shall not expire until the end of the next following day which is not a Saturday, Sunday, or legal holiday in Connecticut.

71464282.3
4 14 2010 3:23 PM

-8-

12.   **Confidentiality Of Terms Of Agreement**:   Employee agrees that the terms and conditions of this Agreement are confidential in nature and that she will not disclose them to anyone other than her spouse, her legal or financial advisors, and any potential future employer on a need-to-know basis.  Employee also agrees that she will direct her spouse, her legal and financial advisors and any potential future employer to maintain the terms and conditions of this Agreement as confidential.  If at some time in the future Employee believes that she is required to disclose the terms or conditions of this Agreement in a manner prohibited by this Section 12 by force of law or otherwise, Employee agrees to notify the Company in writing as promptly as practicable under the circumstances.  Nothing herein shall prevent or prohibit Employee from disclosing the terms and conditions of this Agreement in connection with any action relating to the enforcement of this Agreement.

13.   **No Future Right to Employment**:   Employee agrees that the execution of this Agreement is good, sufficient and legal cause for the Company to reject any application by Employee for employment or re-employment.  Employee also agrees that in the event that she ever seeks employment or re-employment with the Company, it may refuse to employ or re-employ her for any reason or for no reason at all, and Employee may not and shall not file or pursue any demand, complaint, lawsuit or claim against the Company arising from or related to such refusal.

14.   **No Admission Of Wrongdoing**:  Employee and the Company agree that this Agreement is not and shall not be considered as an admission of any wrongdoing or liability on the part of Employee or the Company.

15.   **Specific Performance and Equitable Relief**:  Employee and the Company agree that any breach or threatened breach of Sections 4 – 9 or 12 of this Agreement would result in immediate and irreparable harm.  Accordingly, Employee and the Company agree that either party may seek injunctive relief to enforce, or to prevent the breach, of Sections 4 - 9 or 12 of this Agreement.  Any such action for equitable relief must be filed in the state or federal courts of Connecticut and the parties consent to be subject to personal jurisdiction in all such courts.  In addition, the parties waive any requirement to post a bond in order to bring such an equitable action and, in any such action, the Court shall award the prevailing party such relief as the Court determines is just and proper.

16.   **Arbitration**:  Except as set forth above in Section 15, any other dispute, controversy or claim arising out of or relating to this Agreement or alleging breach of this Agreement shall be resolved by arbitration.  The arbitration shall be conducted as set forth in Section 11.2 of the LLC Agreement.

17.   **Severability**:   Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction, the parties hereby jointly request that such provision be modified to the least extent necessary to render it legal and enforceable.  In the event such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  Notwithstanding the foregoing, if Employee ever seeks and succeeds in having any portion of Sections 4 or 5 declared or ruled to be unenforceable for any reason, Employee then must return

to the Company all Salary Continuation Payments and the cost of Benefits Continuation that she received pursuant to this Agreement.

18.    **Governing Law and Amendment:**    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Connecticut.  This Agreement may not be modified, altered or changed except upon the express written consent of both the Employee and the Company.

19.    **Entire Agreement:**    This Agreement, along with those portions of the Employment Agreement and LLC Agreement having continued application as referenced herein and, if applicable, as amended hereby, sets forth the entire agreement between the parties concerning the terms of Employee's separation from employment with the Company.  It is expressly agreed and understood that the Company does not have and will not have any obligation to provide Employee at any time in the future with any payments, benefits or consideration other than those explicitly set forth or referred to herein. This Agreement fully supersedes any prior written or oral agreements or understandings between the parties regarding Employee's separation from employment with the Company.  The Employee acknowledges that she has not relied on any representations, promises, or agreements of any kind made in connection with her decision to sign this Agreement, except for those set forth in writing in this Agreement. The Company represents and warrants that the execution and delivery of this Agreement by the Company, and the performance of its obligations hereunder, have been duly authorized.

20.    **Counterparts:**    This Agreement may be executed separately, in separate counterparts, by Employee and the Company, and such execution shall be valid and binding, just as if Employee and the Company each had signed the same original at the same time.

21.    **Legal Expenses:**    Each party shall bear her/its own legal expenses pertaining to the negotiation and preparation of this Agreement.

WHEREFORE, intending to be bound by the provisions of the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, the parties hereby enter into this Agreement by signing below:

**EMPLOYEE**

Harumi Aoto Donoyan

STATE OF _Connecticut_
COUNTY OF _Fairfield_

On this _12th_ day of _May_, 2010, before me personally appeared Harumi Aoto Donoyan, to me known to be the person described in the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, who in my presence executed the same, acknowledging such execution to be her free act and deed.

_____
Notary Public
My Commission Expires: _____

JODY R BOLES
Notary Public
Connecticut
My Commission Expires Jul 31, 2014

**ALADDIN CAPITAL HOLDINGS LLC**

_____
By:  Aminkhan Aladin

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

On this _30th_ day of April, 2010, before me personally appeared Aminkhan Aladin, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of Aladdin Capital Holdings LLC and also acknowledging that he has been duly authorized by Aladdin Capital Holdings LLC to enter into this Agreement on its behalf.

_____
Notary Public
My Commission Expires: _____

JODY R BOLES
Notary Public
Connecticut
My Commission Expires Jul 31, 2014

*The undersigned Members of the Company each hereby acknowledges and agrees on behalf of himself/itself and his/its Member Releasors to be bound only by the provisions of Sections 4, 5 and 9 of this Confidential Separation Agreement, General Release and Covenant Not to Sue.*

**MITSUBISHI INTERNATIONAL CORPORATION
MC GLOBAL INVESTMENT INC.**

By: YASUSHI OKAHISA
Its: SVP, MITSUBISHI INTERNATIONAL CORPORATION
PRESIDENT & CEO, MC GLOBAL INVESTMENT INC.

STATE OF NEW YORK
COUNTY OF NEW YORK

On this _10th_ day of ~~April~~ May, 2010, before me personally appeared YASUSHI OKAHISA _____, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of each of Mitsubishi International Corporation and MC Global Investment Inc. and also acknowledging that he has been duly authorized by

71464252.3
4/14/2010 3:23 PM

-11-

each of the foregoing entities to enter into the provisions of this Agreement set forth above on its behalf.

_Aprul Maghakian_
Notary Public
My Commission Expires: 10/22/11

```
APRIL MAGHAKIAN
Notary Public - State of New York
NO. 01MA6175876
Qualified in Bronx County
My Commission Expires 10/22/11
```

**SOJITZ CORPORATION**
**SOJITZ CORPORATION OF AMERICA**

By: _____
Its:

STATE OF NEW YORK
COUNTY OF NEW YORK

On   this   ____   day   of   April,   2010,   before   me   personally   appeared
_____, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of each of Sojitz Corporation and Sojitz Corporation of America and also acknowledging that he has been duly authorized by each of the foregoing entities to enter into the provisions of this Agreement set forth above on its behalf.

_____
Notary Public
My Commission Expires: _____

**ALADIN LP**

_Amin Khan_

By: Aminkhan Aladin

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

On this 15 day of April, 2010, before me personally appeared Aminkhan Aladin, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of Aladin LP and also acknowledging that he has been duly authorized by Aladin LP to enter into the provisions of this Agreement set forth above on its behalf.

_____
Notary Public
My Commission Expires: _____

71464282.3
4/15/2010 8:47 AM

```
JODY R BOLES
Notary Public
Connecticut
My Commission Expires Jul 31, 2014
```

12

each of the foregoing entities to enter into the provisions of this Agreement set forth above on its behalf.

_____
Notary Public
My Commission Expires: _____

**SOJITZ CORPORATION**
**SOJITZ CORPORATION OF AMERICA**

By:_____
Its:

STATE OF NEW YORK
COUNTY OF NEW YORK

On   this   ____   day   of   April,   2010,   before   me   personally   appeared _____, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of each of Sojitz Corporation and Sojitz Corporation of America and also acknowledging that he has been duly authorized by each of the foregoing entities to enter into the provisions of this Agreement set forth above on its behalf.

_____
Notary Public
My Commission Expires: _____

**ALADIN LP**

By:  Aminkhan Aladin

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

On this 15 day of April, 2010, before me personally appeared Aminkhan Aladin, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of Aladin LP and also acknowledging that he has been duly authorized by Aladin LP to enter into the provisions of this Agreement set forth above on its behalf.

_____
Notary Public
My Commission Expires: _____

```
JODY R BOLES
Notary Public
Connecticut
My Commission Expires Jul 31, 2014
```

71464282.3
4/15/2010 8:47 AM

12

Notary Public
My Commission Expires: _____

**SOJITZ CORPORATION OF AMERICA**

By: Teruyasu Yoneda
Its: Executive Vice President , Chief Financial Officer,
     Treasurer and Chief Administrative Officer

STATE OF NEW YORK
COUNTY OF NEW YORK

On this 27th day of April, 2010, before me personally appeared Teruyasu Yoneda_____, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of Sojitz Corporation of America and also acknowledging that he has been duly authorized by each of the foregoing entities to enter into the provisions of this Agreement set forth above on its behalf.

Notary Public
My Commission Expires: May 20, 2010

HELEN L. RESPASS
Notary Public, State of New York
No. 02RE6074522
Qualified in New York County
Commission Expires May 20, 20 10

**ALADIN LP**

By: Aminkhan Aladin

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

On this _____ day of April, 2010, before me personally appeared Aminkhan Aladin, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of Aladin LP and also acknowledging that he has been duly authorized by Aladin LP to enter into the provisions of this Agreement set forth above on its behalf.

Notary Public
My Commission Expires: _____

71464282.3
4/23/2010 5:06 PM

-12-

_____
**Neal Neilinger**

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

On this ⌐5 day of April, 2010, before me personally appeared Neal Neilinger, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed.

_____
Notary Public
My Commission Expires: _____

> JODY R BOLES
> Notary Public
> Connecticut
> My Commission Expires Jul 31, 2014

_____
**Scott MacDonald**

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

On this 15 day of April, 2010, before me personally appeared Scott MacDonald, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed.

_____
Notary Public
My Commission Expires: _____

> JODY R BOLES
> Notary Public
> Connecticut
> My Commission Expires Jul 31, 2014

71464282.3
4/14/2010 4:17 PM

-13-

_____
Scott Harrington

STATE OF
COUNTY OF


On this 15 day of April, 2010, before me personally appeared Scott Harrington, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed.


_____
Notary Public
My Commission Expires: _____

```
┌──────────────────────────────────┐
│           JODY R BOLES            │
│          Notary Public            │
│           Connecticut             │
│ My Commission Expires Jul 31, 2014│
└──────────────────────────────────┘
```

_____

**Scott Harrington**

STATE OF
COUNTY OF

On this _____ day of April, 2010, before me personally appeared Scott Harrington, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed.


_____

Notary Public
My Commission Expires: _____

**SOJITZ CORPORATION**

By: _SHOJI KUNITOKI_ _[signature]_
Its: _GENERAL MANAGER FOR FINANCE DEPT._

On  this  _____  day  of  April,  2010,  before  me  personally  appeared
_____, who in my presence executed the foregoing Confidential Separation Agreement, General Release and Covenant Not to Sue, acknowledging such execution to be his free act and deed on behalf of Sojitz Corporation and also acknowledging that he has been duly authorized by each of the foregoing entities to enter into the provisions of this Agreement set forth above on its behalf.


_____

Notary Public
My Commission Expires: _____



U.S. Department of State
*Individual Acknowledgment Certificate*

| | |
|---|---|
| JAPAN | ) |
| CITY OF TOKYO | ) SS: |
| EMBASSY OF THE UNITED STATES OF AMERICA | ) |

I certify that on this day the individual named below appeared before me and acknowledged to me that the attached instrument was executed freely and voluntarily.

_____

— SHOJI KUNITOKI —
(Printed Name(s) of Individual(s))

_____
(Signature of Consular Officer)

**Gonca Cool**
**Consular Associate**
(Title of Consular Officer)

_____
APR 26 2010
Date (mm-dd-yyyy)