UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALADDIN CAPITAL HOLDINGS, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:11cv655 (MRK) |
| | : |
| HARUMI AOTO DONOYAN, | : |
| | : |
| Defendant. | : |

## RULING AND ORDER

Plaintiff Aladdin Capital Holdings, LLC ("Aladdin Capital") is a boutique investment banking firm based in Stamford, Connecticut. *See* Compl. [doc. # 7] ¶ 6. According to Aladdin Capital's Complaint, Aladdin Capital formerly employed Defendant Harumi Aoto Donoyon as a Senior Managing Director for Japan Sales and Marketing. *See id.* ¶ 7. When Ms. Donoyan was promoted to the senior management position in 2008, Aladdin Capital required her to sign a restrictive covenant promising not to compete with the firm following her termination so long as she continued to receive compensation from the firm. *See id.* In April 2010, Ms. Donoyan was terminated from the firm. *See id.* ¶ 10. However, upon her termination, the firm agreed to continue paying her full salary and benefits through May 5, 2011. *See id.* ¶ 11.

Aladdin Capital alleges in its Complaint that Ms. Donoyan breached her restrictive covenant with the firm by directly competing with the firm while she continued to receiving her salary and benefits from the firm. *See id.* ¶ 30. Aladdin Capital has agreed to submit any claims for damages against Ms. Donoyan for arbitration, and therefore cannot seek a damage award from this Court. However, Aladdin Capital nonetheless seeks a judgment from this Court declaring that Ms. Donoyan breached the restrictive covenant, as well as an injunction prohibiting Ms. Donoyan from further competition with the firm. *See id.* ¶¶ 37, 44.

Although Aladdin Capital wishes for this Court to enjoin Ms. Donoyan from further competition with the firm, the parties both agree that the restrictive covenant between Aladdin Capital and Ms. Donoyan expired on May 5, 2011, when Ms. Donoyan stopped receiving a salary and benefits from the firm. Aladdin Capital did not file this lawsuit against Ms. Donoyan until April 25, 2011, just ten days before the restrictive covenant was set to expire. Moreover, Aladdin Capital did not serve Ms. Donoyon until April 28, 2011, just seven days before the restrictive covenant was set to expire.

In light of the fact that both parties concede that the restrictive covenant between Aladdin Capital and Ms. Donoyan has expired, the issue currently before the Court is whether Aladdin Capital's request for injunctive relief – and more specifically, its request for a preliminary injunction, *see* Mot. for Preliminary Injunction [doc. # 2] – is now moot. *See, e.g.*, *Economics Laboratory, Inc. v. Donnolo*, 612 F.2d 405, 409 (9th Cir. 1979). The parties have now briefed that issue very, very thoroughly. *See* Def.'s Proposed Scheduling Order [doc. # 26]; Pl.'s Opp'n to Def.'s Proposed Scheduling Order [doc. # 27]; Def.'s Opp'n to Pl.'s Scheduling Order and Reply in Further Supp. of Def.'s Proposed Scheduling Order [doc. # 29]; Pl.'s Reply in Further Supp. of Pl.'s Proposed Scheduling Order [doc. # 31]; Pl.'s Brief Regarding Injunctive Relief [doc. # 34]; Def.'s Brief Regarding Injunctive Relief [doc. # 35]; Def.'s Reply to Pl.'s Brief [doc. # 38]; Pl.'s Reply to Def.'s Brief [doc. # 39]. For the reasons set forth below, after careful consideration, the Court concludes that Aladdin Capital's request for injunctive relief is moot.

The Court begins by noting the basis for subject-matter jurisdiction in this case. As Aladdin Capital recognizes, *see* Compl. [doc. # 7] ¶ 3, the diversity jurisdiction statute, 28 U.S.C. § 1332, provides the only basis for the Court to exercise subject-matter jurisdiction over this case. That statute provides that this Court has subject-matter jurisdiction over civil actions

between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See id.* § 1332(a). As the Court has already noted, Aladdin Capital does not seek any damages from Ms. Donoyan in this action. That does not prevent this Court from exercising diversity jurisdiction. In a suit seeing injunctive relief only, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347 (1977); *see DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 276 (2d Cir. 2006).

Aladdin Capital has satisfied the diversity jurisdiction statute's amount-in-controversy requirement. In the Second Circuit, the value of injunctive relief is generally calculated from the plaintiff's perspective. *See DiTolla*, 469 F.3d at 276 (citing *Kheel v. Port of New York Authority*, 457 F.2d 46, 49 (2d Cir. 1972)). Aladdin Capital has specifically alleged that the value of the injunction it seeks here exceeds $75,000.00. *See* Compl. [doc. # 7] ¶ 3. There appears to be a sound basis for Aladdin Capital's allegation since Aladdin Capital also alleges that Ms. Donoyan was paid an annual salary of $225,000.00 during the year in which she breached her promise not to compete with the firm. *See id.* ¶ 17.

Because this is a diversity action, the Court must apply state law – specifically, Connecticut contract and employment law. When this Court sits in its diversity jurisdiction, it is "for that purpose, in effect, only another court of the State." *Guarantee Trust Co. v. York*, 326 U.S. 99, 108 (1945); *see Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 282 (2d Cir. 1981). "[T]he extent to which federal courts must conform their remedies in diversity cases to those available in the state courts is still an open question." 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4513, at 441 (2d ed. 1996) (discussing the equitable-remedial-rights doctrine and citing *Stern v. South Chester Tube Co.*, 390 U.S. 606,

609 (1968)); *see also Genovese Drug Stores, Inc. v. Connecticut Packing Co.*, 732 F.2d 286, 288 n.1 (2d Cir. 1984) (declining to decide whether, as a general matter, the remedies available in a district court sitting in diversity must be limited to those that would be available in state court). However, it is well recognized that "in most cases . . . remedies for state-created rights [must] be granted according to state law." 19 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4513, at 446; *see, e.g.*, *Bangor Baptist Church v. State of Maine Department of Educational and Cultural Services*, 576 F. Supp. 1299, 1314 n.21 (D. Me. 1983) ("It can scarcely be doubted that the availability of alternative or additional equitable remedies in federal, as opposed to state, court may 'substantially affect the enforcement of the right.'").

The remedies available to Aladdin Capital in this case should be limited to those remedies that would have been available to Aladdin Capital in state court. The equitable remedy Aladdin Capital seeks would extend the duration of the restrictive covenant that the firm entered with Ms. Donoyan, which expired by its terms on May 5, 2011, beyond the period that the parties agreed to in advance. In determining whether a Connecticut state court would be willing to provide such a remedy, this Court must proceed with careful regard for the federal courts' special – and limited – role in resolving disputes regarding unsettled areas of state law. *See, e.g.*, *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 553-54 (D. Conn. 2010). To the extent that state law is unsettled, this Court must keep in mind that its "role as a federal court sitting in diversity is not to adopt innovative theories that may distort established state law." *National Union Fire Insurance Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001) (alteration and quotation marks omitted). The Court must proceed with caution, "giv[ing] the fullest weight to pronouncements of the state's highest court . . . while [also] giving proper regard to relevant

4

rulings of the state's lower courts." *Maska U.S., Inc. v. Kansa General Insurance Co.*, 198 F.3d 74, 78 (2d Cir. 1999) (quotation marks omitted).

The Court recognizes that the issue before the Court is a somewhat controversial one. There is a split of authority among various states' courts regarding whether – and when – a court sitting in equity can extend the duration of a restrictive covenant in a contract as a remedy for a violation of the restrictive covenant. *See* Donald J. Aspelund & Stephen L. Lundwall, *Employee Noncompetition Law* § 8:12 (2009) ("Covenantees have . . . sought so-called 'compensatory injunctions' extending the time for the restrictive covenant to compensate for the breach. The courts have given such attempts a mixed reception."). State court decisions regarding that issue have fallen into the following three categories:

- First, some courts have reasoned that a court has broad and inherent power to extend the duration of a restrictive covenant as an equitable remedy for breach. *See, e.g.*, *Rogers v. Runfola*, 57 Ohio St. 3d 5, 8-9 (1991).

- Second, some courts have suggested that the duration of a restrictive covenant may only be extended as a remedy for breach if the parties included language in their restrictive covenant contemplating such a remedy. *See, e.g.*, *KX Industries, LP v. Saaski*, No. CV960386808S, 1997 WL 583629, at *4 (Conn. Super. Aug. 29, 1997); *see also* 6 Richard A. Lord, *Williston on Contracts* § 13:5 (4th ed. 2011) (reasoning that courts should uphold provisions in restrictive covenants providing for extension following a party's breach of the restrictive covenant).

- Third, some courts have reasoned that the contractually-specified duration of a restrictive covenant may never be extended by a court as a remedy for breach. *See, e.g.*, *Wilson v.*

*Chemco Chemical Co.*, 711 S.W. 2d 265, 268 (Tex. App. 1986) ("The trial court may not enlarge the time of the covenant's restrictions from the period stated in the contract.").

The restrictive covenant at issue in this case does not provide for automatic extension upon a breach of the covenant. Thus, the precise question before this Court is whether the Connecticut Supreme Court would hold that absent language in a restrictive covenant specifically contemplating extension of the covenant as a remedy for breach, a court may nevertheless equitably extend the duration of the covenant. The Court acknowledges that the highest courts of several different states have explicitly held that a restrictive covenant may be equitably extended as a remedy for breach of the covenant even absent an *ex ante* agreement by the parties to such a remedy. *See Rogers*, 57 Ohio St. at 8-9; *Roanoke Engineering Sales Co., Inc. v. Rosenbaum*, 223 Va. 548, 554-55 (1982); *Capelouto v. Orkin Exterminating Co. of Florida, Inc.*, 183 So. 2d 532, 534 (Fla. 1966). That said, the question here is not what other states' highest courts have done, but whether the Connecticut Supreme Court would follow those other courts' somewhat controversial decisions. *See* Aspelund & Lundwall, *Employee Noncompetition Law* § 8:12 (detailing the split of authority regarding courts' equitable power to extend the duration of restrictive covenants).

The Court finds no evidence that the Connecticut Supreme Court would follow the decisions of other states' high courts that have held that trial courts have broad equitable power to extend even an expired restrictive covenant as a remedy for breach. *See, e.g.*, *Rogers*, 57 Ohio St. 3d at 8-9. The first state high court to explicitly adopt the position that Aladdin Capital urges this Court to adopt did so nearly fifty years ago. *See Capelouto*, 183 So. 2d at 534. In the nearly fifty years since the Florida Supreme Court's decision, not a single judge applying Connecticut law has ever concluded that Connecticut law permits courts to equitably extend the duration of a

6

restrictive covenant as a remedy for breach of the covenant, absent a prior agreement from the parties. The Court recognizes that other judges applying Connecticut law have occasionally issued injunctive orders that have had that effect. *See, e.g.*, *United Rentals, Inc. v. Frey*, No. 3:10cv1628 (HBF), 2011 WL 693013, at *10 (D. Conn. Feb. 18, 2011); *Edge Technology Services, Inc. v. Worley*, No. CV0540082782005, WL 1971109, at *9 (Conn. Super. July 5, 2005); *Elizabeth Grady Face First, Inc. v. Escavich*, 321 F. Supp. 2d 420, 428 (D. Conn. 2004). But not a single one of those judges has explained the reasoning for extending the duration of a restrictive covenant, nor even acknowledged that the duration of the covenant was being extended by the judge's decision.

The Court notes that the single Second Circuit case that Aladdin Capital cites, *Levitt Corp. v. Levitt*, 593 F.2d 463 (2d Cir. 1979), does not provide even a hint of an answer to the specific question that is before this Court. The Second Circuit did not apply Connecticut law in that case. *See id.* at 466. Furthermore, while there are passing references in the Second Circuit's decision to the defendant's noncompete agreement with plaintiff, *see id.* at 465, the actual claim in the case was a claim for unlawful use of a trademark that the plaintiff had sold to the defendant. *See id.* at 466. The injunction at issue in the case enjoined the defendant's ongoing trademark violations, and did not extend a restrictive covenant. *See id.* at 466-67.

In addition, there is some evidence that the Connecticut Supreme Court would not follow those decisions. There is not one court decision applying Connecticut law and not one Second Circuit decision which expressly and directly supports Aladdin Capital's position. Thus, the Court finds that the appropriate course here is to follow the Connecticut Supreme Court's *dicta* in *Van Dyck Printing Co. v. Nicola*, 231 Conn. 272 (1994), which suggests that the expiration of a restrictive employment covenant renders an employer's request for injunctive relief moot. *See id.*

at 272 n.1. In *Van Dyck Printing Co. v. Nicolo*, 231 Conn. Supp. 191, 191 (Aug. 11, 1993), the Connecticut Superior Court concluded that the employer plaintiff's request for an injunction prohibiting a former employee from competing with the firm was moot, since by the time the request came before the court, the period specified in the former employee's restrictive covenant had already passed. *See id.* In its opinion affirming the trial court's final judgment awarding damages for breach, the Connecticut Superior Court seemingly approved the trial court's conclusion regarding equitable relief, albeit indirectly. *See Van Dyck Printing*, 231 Conn. at 272 n.1 ("The plaintiff's claim for injunctive relief had become moot by the time of trial.").

The Court believes that the Connecticut Supreme Court's decision to include that *dictum* in a footnote in its *Van Dyck* opinion is particularly telling in light of the fact that *Van Dyck* was decided relatively recently, in the mid-1990s. *See Maska U.S.*, 198 F.3d at 78 (requiring that federal courts sitting in diversity pay due regard to all pronouncements of state high courts, not just to state high courts' holdings). By the time that the Connecticut Supreme Court issued the *Van Dyck* opinion, no less than three state high courts had held that those states' courts have the equitable power to extend the duration of restrictive covenants as a remedy for breach. *See Rogers*, 57 Ohio St. 3d at 8-9; *Roanoke Engineering Sales*, 223 Va. at 554-55; *Capelouto*, 183 So. 2d at 534. If the Connecticut Supreme Court had disagreed with, or in any way doubted, the trial court's conclusion that it lacked the power to grant the equitable relief sought by the plaintiff, then the Connecticut Supreme Court would presumably have made some comment about one of those other state high court decisions.

The Court concludes as a matter of state law that a request for injunctive relief based on a restrictive covenant becomes moot upon the expiration of the period specified in the parties' restrictive covenant, unless the restrictive covenant contains language that expressly permits

extension of the restrictive covenant. The Court is particularly confident that is the correct result here, in the context of a restrictive employment covenant, since such covenants are generally disfavored in Connecticut. *See Scott v. General Iron & Welding Co., Inc.*, 171 Conn. 132, 137 (1976). Aladdin Capital's request for injunctive relief is therefore moot.

Aladdin Capital could have put a provision in Ms. Donoyan's restrictive covenant specifying that a breach of the covenant would result in extension of the non-compete period, *see, e.g.*, *KX Industries*, 1997 WL 583629, at *4, but it did not. Where Aladdin Capital and Ms. Donoyan did not bargain for such a remedial provision *ex ante*, it would be inappropriate to extend the duration beyond the period during which Ms. Donoyan continued to receive a salary and benefits from Aladdin Capital, as specified in the parties' written agreement. *See Economics Laboratory*, 612 F.2d at 409 ("Covenants by an employee not to compete have never been especially favored in equity but may be enforced if not unreasonable and if not broader than required for the employer's protection. There is no reason, however, to enforce a covenant which by its terms is no longer in effect."). That said, while Aladdin Capital does not seek damages here, it may well be able to recover damages for the breach of the restrictive covenant by Ms. Donoyan in arbitration.

As a result of the Court's conclusion, Aladdin Capital's Motion for Preliminary Injunction [doc. # 2] is DENIED as moot, and its Motion to Expedite Discovery [doc. # 5] is DENIED. Ms. Donoyan's Motion to Dismiss for Lack of Jurisdiction [doc. # 36] will remain pending. Since the parties have an arbitration agreement that forbids Aladdin Capital from seeking damages from this Court, the only remaining question is whether the Court still has the power to grant a declaratory judgment in Aladdin Capital's favor. The Court thanks both parties' counsel for their careful and thorough briefing of this preliminary issue.

IT IS SO ORDERED.

/s/         Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 8, 2011.**